Howard Lawrence **RAMSEY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17552.

United States Court of Appeals Eighth Circuit.

June 24, 1964.

**876**

Roger M. Hibbits, St. Louis, Mo., made argument for the appellant and filed typewritten brief for appellant.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for the appellee and filed typewritten brief for appellee, with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Ramsey was indicted, found guilty by a jury, and sentenced on a charge of unlawfully and willfully causing a described falsely made, forged and counterfeited check to be transported in interstate commerce with fraudulent intent in violation of 18 U.S.C.A. § 2314. Defendant filed a timely motion for new trial wherein he raised in substance the errors here relied upon for reversal. Such motion was overruled. This appeal is from the denial of such motion and from the final judgment and sentence.

Defendant asserts the court erred in denying his motion for new trial and in entering judgment of conviction for the following reasons:

I. The evidence is insufficient to support a conviction in that there is no proof that defendant caused the forged check to be transported in interstate commerce.

II. The court improperly limited defendant's argument to the jury and improperly overruled defendant's objections to the Government counsel's argument.

III. The court unduly restricted defendant's cross-examination of Government witness Tracy.

■ Defendant at the trial made no motion for acquittal nor did he except to any instruction given or request any instruction. The appropriate way to challenge the sufficiency of the evidence to support a verdict is by motion for acquittal. Harris v. United States, 8 Cir., 297 F.2d 491, 492; Cox v. United States, 8 Cir., 284 F.2d 704, 709.

■■ The proper foundation for establishing a basis for questioning the applicable law as stated by the court in its instruction is by exceptions to instructions and request for instructions. Defendant raised his point "I" contention challenging the sufficiency of the evidence only by motion for new trial. Ordinarily, the ruling upon a motion for new trial is not reviewable upon appeal and in any event a ruling upon such motion can be upset only for abuse of discretion. Dranow v. United States, 8 Cir., 307 F.2d 545, 567.

■ It is of course possible for the court under criminal rule 52(b) to notice plain error but such procedure is to be used only in exceptional circumstances to avoid a miscarriage of justice. We would be warranted in summarily affirming upon point "I" upon the basis that there is nothing before us for review. We are satisfied that no plain error situation is presented. The parties have argued the issues raised upon this appeal upon the merits and although not required to do so, we have chosen to consider the issues raised by the defendant upon their merits.

### I.

The indictment charges that the defendant did on May 3, 1963, with unlawful and fraudulent intent, cause to be transported in interstate commerce from St. Louis County, Missouri, to Nashville, Tennessee, a falsely made, forged and counterfeited check for $87.50 purportedly drawn by Service Lines, Incorporated, upon the First American National Bank of Nashville, Tennessee, in violation of 18 U.S.C.A. § 2314. The statute so far as here material defines the crime here involved as follows:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *."

Substantial evidence supports the jury's determination that the defendant presented the $87.50 check described in the indictment at a teller's window at the North Side Bank in St. Louis County, Missouri, and received payment thereof; that the check was forged; that the defendant knew the check was forged, and that the act was done willfully with an unlawful and fraudulent intent. The sufficiency of the evidence to establish such facts is not challenged.

Defendant's position is that there is no substantial evidence to establish that he caused the forged check to be transported in interstate commerce. He contends that the check came to rest when the North Side Bank discovered, shortly after it had paid the check, that it was a forgery. Defendant in support of such theory places principal reliance upon United States v. Gardner, 7 Cir., 171 F.2d 753. The opinion in that case expresses grave doubt as to whether there was any evidence to connect the defendant with the transaction. The court does state that Chenoweth, who received a forged check drawn on an out of state bank, learned of the forgery before he placed the check in bank channels and stated that he deposited the check "for the purpose of making a case from the federal standpoint." The court then uses the language relied upon by the defendant reading:

"[T]he transportation was caused by and was that of Chenoweth and

nobody else (assuming that the Richmond bank had no knowledge of the situation). While we are referred to no case directly in point, we are of the view that the checks came to rest insofar as interstate commerce is concerned when Chenoweth learned that they were forgeries." 171 F.2d 753, 756.

The case before us differs materially from the Gardner case. There is no evidence in our present case that the check was placed in interstate channels solely for the purpose of creating a federal offense. On the contrary, the bank by sending the check out for collection received the proceeds of the check.

It is established that the North Side Bank at the time it received and paid for the forged check acted in good faith and thought that it was accepting a genuine instrument. It is true, as contended by defendant, that the bank after subsequently receiving on the same day several similar forged checks became suspicious and made inquiry and learned from Service Lines, the purported drawer of the check, that some of its check blanks together with a check signing device had been stolen and that the check involved in this case was not a genuine or authorized check. North Side Bank received the check on May 3 but did not place it in banking channels for collection until May 22. The reason for delay in transmitting the check for payment is not explained. The record further shows that the Nashville bank received advice that the forged checks were in circulation before the check here involved was received by such bank and paid. The Nashville bank received the check on May 23 and paid it on that date, charging it to Service's account, and said bank in due course returned such cancelled check to Service with other cancelled checks in the usual course of business.

18 U.S.C.A. § 2(b) provides, "Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

In United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359, a conviction under the National Stolen Property Act was sustained. The court, in answering an argument similar to that made here by the defendant, states:

"A word will dispose of the idea that Sheridan did not 'cause' the transportation. Certainly he knew the checks would have to be sent to the Missouri bank for collection. Given the proven forgery and uttering, no other conclusion would be possible. Necessarily, too, it would follow he intended the paying bank to send the checks there for that purpose. He knew they must cross state lines to be presented. One who induces another to do exactly what he intends, and does so by defrauding him, hardly can be held not to 'cause' what is so done." 329 U.S. 379, 391, 67 S.Ct. 332, 338. See Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435.

In Cunningham v. United States, 4 Cir., 272 F.2d 791, defendant appealed from a conviction of causing a forged check to be transported in interstate commerce in violation of 18 U.S.C.A. § 2314. There as here, defendant claimed that the chain of causation was broken when the bank learned of the forgery before placing the check in commerce for collection. The court rejected such contention, stating:

"This argument is completely lacking in merit and requires no extended treatment. By his acts, the defendant set in motion the chain of events that led to the transportation of the check in interstate commerce." 272 F.2d 791, 794.

The excerpt from Sheridan, which we have quoted, is then set out and relied upon in support of such conclusion.

The Sheridan and Cunningham cases constitute sound authority firmly supporting the conclusion that substantial evidence is here presented to support a finding that the defendant caused the transportation of the forged check. The

evidence warrants a finding by the jury that defendant at the time he presented the check drawn on an out of state bank and received payment thereon reasonably anticipated that the instrumentalities of commerce would be used in an effort to collect the check. Such instrumentalities of commerce were in fact used. The court properly submitted the case to the jury and certainly did not abuse its discretion in denying the motion for new trial.

## II.

Defendant's counsel, in the course of argument, urged that the check was run through interstate banking channels only for the purpose of making the offense a federal crime and that defendant had nothing to do with causing the interstate transportation of the check. Defendant's counsel, after purporting to state some facts, said, "Now, who created this second offense? The person that put the check in the window? He committed a crime. There is no question about this, but did he commit the crime that's been charged here today? On May 3, he put that check in the window." Objection to such argument was sustained on the basis that counsel was going outside the evidence.

Later during argument, Government counsel stated in effect that when the forged check drawn on the out of state bank was cashed, that amounted to putting the check in interstate commerce. Defendant's objection to such statement was overruled.

The law as stated in Division I of this opinion applies here. There is adequate evidentiary basis to support an argument that the defendant's activities as disclosed by the evidence were adequate to amount to causing the check to be placed in interstate commerce.

As heretofore stated, defendant took no exception to any of the court's instructions nor did he request any instruction. If defendant desired a more specific statement of his theory of the law, he should have submitted a requested instruction on the point. We are satisfied that the court committed no prejudicial error in the rulings complained of by the defendant.

## III.

Miss Tracy, the bank teller who had received the check and who had identified the defendant as its passer, on cross-examination was asked, "Miss Tracy, were you told, at the time you were brought down there, did anyone tell you that the police had the man that passed the check?" Objection to the question as calling for hearsay was sustained. No explanation of the purpose of this question was made to the court. The question obviously called for hearsay testimony and appears to be objectionable in form.

Defendant in his brief states that the purpose of the question is to show that if the witness was told the police had the check passer in custody, such information would influence the witness's identification. It fairly appears from the prior testimony that Miss Tracy went to the police station to identify in a police lineup a suspect being held there. Liberal cross-examination was allowed. The witness's identification of the defendant is positive. Identification was also made by another bank employee.

The trial court has a large discretion with respect to the scope of cross-examination. We do not believe that the court abused its discretion in sustaining the objection. In any event, we are convinced that such ruling does not constitute prejudicial error requiring a reversal.

Our examination of the record satisfies us that the defendant has had a fair trial. The court committed no prejudicial error and did not abuse its discretion in denying defendant's motion for new trial.

The judgment is affirmed.