Edward John PETSCHL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18347.

United States Court of Appeals
Eighth Circuit.

Dec. 14, 1966.

R. L. Sorenson, St. Paul, Minn., for appellant.

Patrick J. Foley, U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT and GIBSON, Circuit Judges, and REGISTER, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Defendant Edward John Petschl was indicted upon a charge of knowingly using the United States Mails to deliver to Jo Ann Boss a letter containing a threat to injure James Jorgenson, in violation of 18 U.S.C.A. § 876. He entered a plea of not guilty, was tried to a jury, found guilty, and was sentenced to three years' imprisonment with the provision that he be eligible for parole at such time as the Board of Parole may determine. Defendant has taken this timely appeal from such conviction.

Defendant urges upon this appeal: (1) that the court erred in denying his motion for acquittal based upon insufficiency of the evidence to support the conviction; (2) that he is entitled to a new trial by reason of errors in instructions, error in stripping him of the presumption of innocence, and prejudicial misconduct on the part of the court and prosecuting attorney.

A careful examination of the entire record satisfies us that the defendant has had a fair trial and that the judgment of conviction should be affirmed.

We are satisfied that when the evidence is viewed in the light most favorable to the Government, as is required by established appellate rules, an adequate evidentiary basis exists to support the conviction. The essential elements of the offense charged, each of which must be proved beyond a reasonable doubt, are: (1) that defendant wrote a letter addressed to Jo Ann Boss containing a threat to injure James Jorgenson; (2) that defendant knowingly caused the letter to be forwarded by United States mail.

The sufficiency of the evidence to establish the first element of the offense is

not seriously questioned. The evidence adequately establishes that defendant, in his own handwriting, wrote a letter addressed to Jo Ann Boss which contained a threat to injure James Jorgenson. The fact that the letter contains such a threat is not disputed. Defendant at the time of the writing and delivery of the letter in controversy, Exhibit 2, was serving concurrent sixty-day sentences in the Ramsey County jail imposed upon his plea of guilty in state court on charges of assaulting Kay Vollhaber and James Jorgenson, and in addition the consecutive sentence of sixty days for traffic violations. Defendant had been previously engaged to Kay Vollhaber and Jorgenson at the time here in controversy was dating her. The conviction on the assault charge was entered on May 25, 1965.

Defendant strenuously urges that there is no substantial evidence to establish the second element of the offense. He has preserved such question for review by raising it in his motion for judgment of acquittal, which motion was overruled. Defendant urges that there is no proof to support a finding that he mailed or caused the letter Exhibit 2 to be mailed.

Defendant admits that he placed the letter Exhibit 2 in an envelope which he sealed and addressed thus:

> "Jo Ann Boss
> % Kay Vollhaber
> 2977 No Rice St
> St Paul 17 Minn"

In the left-hand corner is his address, "E. Petschl, 692 Sunnit Ave, St Paul Minn." The envelope is in evidence and shows a canceled five-cent stamp and shows mailing at St. Paul on June 9, 1965. It is established that the envelope containing Exhibit 2 was received by Jo Ann Boss through the mail.

The letter is dated June 9, 1965. Defendant as a witness testified that he wrote the letter on May 25, that he delivered the letter in the sealed envelope on the following morning to a fellow prisoner, Noel Scott, who was released on bail that day, and that he directed Scott to deliver it personally to the addressee, which Scott agreed to do "when I can find time". Scott corroborated such evidence but states that he subsequently determined that he was unable to personally deliver the letter because he did not have a car and that he then placed a stamp on the letter and mailed it.

Defendant makes a rather incredible explanation of why the letter written May 25th was dated June 9, stating that he expected his former girl friend's mother to call on him at the jail before that date, and he was planning to tell her that he did not mean what he said in the letter but that he wrote the letter and told Scott to deliver it any time after June 9 because "I do not know for sure whether she is coming or not." Scott did not corroborate the testimony of the defendant that the letter was not to be delivered before June 9.

■ The foregoing testimony of the defendant and Scott, that the delivery of the letter, Exhibit 2, was restricted to a personal delivery, if believed by the jury would conclusively negate any possible inference that the defendant authorized the use of the mail in the delivery of the letter entrusted to Scott. Obviously the jury did not credit such testimony and they were not compelled to do so. The jury as the sole judge of the credibility of witnesses is not bound to accept the testimony of any witness as being true. Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859; Northcraft v. United States, 8 Cir., 271 F.2d 184, 187; United States v. Pugliese, 2 Cir., 346 F.2d 861, 863; United States v. Saka, 3 Cir., 339 F.2d 541, 543; Taylor v. United States, 9 Cir., 320 F.2d 843, 849.

The Government advances the theory that the letter dated June 9, was not given to Scott on May 25 or 26 but was in fact written on June 9, the date it bears. In support thereof, it urges that the letter contains the language "when I went to court two weeks ago." The Government urges that this refers to the court appearance where be entered the plea of guilty which occurred on May 25, which would make the June 9 date of the letter about two weeks after the May 25

court appearance. There is evidence that letters sent from the jail through official channels are censored and bear a censorship mark and that Exhibit 2 is not so marked. There is also evidence that a letter such as Exhibit 2 would not pass censorship. It would seem entirely possible that the letter could be smuggled out of the jail through a prisoner being released or through a visitor, as was the situation with the letter given to Scott. It is obvious that Exhibit 2 and its enclosing envelope got out of the jail and into the mails in some manner and it also seems apparent that defendant intended Exhibit 2 to reach the addressee.

■ It is well-established that proof of mailing and causing mailing may be made by circumstantial evidence. Marvin v. United States, 10 Cir., 279 F.2d 451, 454; Cochran v. United States, 8 Cir., 41 F.2d 193, 205; Whealton v. United States, 3 Cir., 113 F.2d 710, 713; Greenbaum v. United States, 9 Cir., 80 F.2d 113, 125.

■ As stated by the defendant, there are cases such as Freeman v. United States, 3 Cir., 20 F.2d 748, where the court determined that the evidence was insufficient to establish mailing. Each case must be judged upon its own facts. In *Cochran,* we point out that the proof of mailing in the case before us is stronger than the proof in *Freeman.*

In Marvin v. United States, the court holds:

"To establish that the several uses of the mail were caused by defendant, it was sufficient to show that he set forces in motion which foreseeably would involve mail uses. And, while in some instances there was no direct proof as to exactly how, where, and by whom the letters were deposited or received, the alleged mail uses could be established circumstantially." See also supporting authorities in footnotes 6 and 7. 279 F.2d 451, 454.

In Pereira v. United States, 347 U.S. 1, 8, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435, the Court states, "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."

■ We are satisfied as a result of our examination of the record in this case that an ample evidentiary basis exists for a finding that the defendant caused the use of the mail in the delivery of Exhibit 2. We have the defendant's own testimony that he wrote the letter, placed it in an envelope addressed as above described, and placed it in the hands of Scott for delivery. Scott testified he placed the letter in the mail. The possibility exists by reason of the date discrepancies that the envelope given Scott did not contain Exhibit 2 and that the Exhibit 2 letter may have been given to some other undisclosed individual by defendant for mailing. The jury was warranted in determining that the defendant set in motion the forces which foreseeably would involve the use of the mail. The letter was addressed in a manner to fully conform with mailing practices. The inclusion of the postal zone would be relevant only if the letter were mailed. It would not be usual to so address a letter which is to be personally delivered. We believe that it would be reasonable for the jury to infer from the manner in which the envelope was addressed that defendant intended it to be sent through the mails, particularly if as seems to be the case the jury disbelieved the testimony of defendant and Scott with reference to the delivery being restricted to personal delivery. It is established beyond dispute that the mail was actually used to transmit the letter and that such letter was received by the addressee through the mail. The court committed no error in overruling defendant's motion for acquittal.

We now reach the errors asserted by the defendant as a basis for a new trial. Such claimed errors consist of charges of misconduct by the court and Government counsel, an erroneous statement at the start of the trial of the presumption of

innocence, and the criticism of three of the court's instructions. At the outset, we observe that it is established beyond dispute that none of these asserted errors were raised in the trial court and that all are asserted for the first time upon appeal. The instructions were taken up individually by the trial court prior to argument to the jury. Defendant's requested instructions were given as offered or in substance. No objection or exceptions were taken to any instruction given or refused. After the instructions were read to the jury, counsel for defendant when afforded an opportunity to except stated, "The defense has no objections, Your Honor."

██ The short answer to all of the contentions hereinabove set out is that since none of the asserted errors were properly raised in the trial court, such errors are not open for review absent a plain error situation. Recently in Aggers v. United States, 8 Cir., 366 F.2d 744, we reaffirmed our many prior holdings that under Rule 30, Fed.R.Crim.P., a proper exception or request was essential to preserve for review any claimed error in instructions, stating:

"The proper foundation for establishing a basis for questioning the applicable law as stated by the court in its instructions is by request for instruction or exceptions to instructions given. Absent such foundation, asserted errors in instructions are not entitled to consideration upon appeal absent a Rule 52(b) plain error situation." 366 F.2d 744, 748.

██ We have also repeatedly held that charges of misconduct on the part of counsel are not open for review unless appropriate objection or motion for mistrial is made in the trial court. Patterson v. United States, 8 Cir., 361 F.2d 632, 636; Birnbaum v. United States, 8 Cir., 356 F.2d 856, 866.

The same rule applies to asserted misconduct on the part of the court. Fitzgerald v. United States, 5 Cir., 324 F.2d 153; Smith v. United States, 5 Cir., 265 F.2d 14, 18.

Defendant urges that the errors he asserts be noted as plain error under Rule 52(b). In Page v. United States, 8 Cir., 282 F.2d 807, 810, this court speaking through the late Judge Sanborn states:

"But the power of a reviewing court to consider a question first presented on appeal is an exception to the rule that such a court will not consider errors not objected to at the trial. Lamento v. United States, 8 Cir., 4 F.2d 901, 904. A trial judge ordinarily should not be held to have erred in not deciding correctly a question that he was never asked to decide."

██ The Rules of Criminal Procedure provide a fair and orderly plan for the administration of criminal justice and ordinarily the rules therein set forth for the preservation of error for review should be observed. We have frequently held that resort to the plain error rule is appropriate only in exceptional cases where such course is necessary to prevent a miscarriage of justice. West v. United States, 8 Cir., 359 F.2d 50, 53; Syverson v. United States, 8 Cir., 342 F.2d 780, 781; Craig v. United States, 8 Cir., 337 F.2d 28, 29; Ramsey v. United States, 8 Cir., 332 F.2d 875, 877.

██ In our present case, the closest approach to a plain error situation is presented by the criticism of the instructions. Defendant's first challenge is to the instruction reading:

"If you find that the defendant *or his witnesses* testified contrary to the proven facts and did so willingly and with knowledge of the falsity, you are at liberty to consider that circumstance as evidence of said defendant's guilty conscience regarding the matter under inquiry." (Emphasis added.)

The Government states that we approved such an instruction in Rizzo v. United States, 8 Cir., 304 F.2d 810, and cases there cited. The instruction here goes beyond *Rizzo* by reason of the inclusion herein of the italicized words in the instruction, "or his witnesses", which words are not included in the *Rizzo* in-

struction. We consider the instruction above quoted to be erroneous but do not consider that the error rises to the stature of plain error. The relevant testimony of the defendant and his witnesses related to the testimony of defendant and Scott that the delivery of the letter was to be restricted to a personal delivery. Thus it would appear that if one testified falsely upon this issue, such would also be the case with respect to the testimony of the other.

The second instruction criticized reads:

"There were several methods available to the defendant for making delivery of the envelope involved in this case besides the use of the U. S. Mails. If you find that the defendant chose one of such other methods and the mail was used by someone else without his knowledge and consent, he would not be guilty of the crime charged in the indictment and you should render a verdict of not guilty in such case."

■■■■ This instruction was given by the court upon the specific written request of the defendant. A party is in no position to challenge the giving of an instruction which he has requested. Bianchi v. United States, 8 Cir., 219 F.2d 182, 194; Sherwin v. United States, 9 Cir., 320 F.2d 137, 147. Other instructions clearly placed the burden of proof upon all issues upon the Government and it is unlikely that this instruction misled the jury.

The last challenge to the instructions is that undue prominence was given to the credibility of the defendant as a witness by unduly repetitive instructions. Doubtless the instruction on this phase of the case could have been improved upon.

A careful examination of the record, including the instructions as a whole, satisfies us that the asserted errors in the instructions did not result in a miscarriage of justice such as to require invocation of the plain error rule. The crucial contested issue here was a simple one as to whether defendant knowingly caused the use of the mail in the delivery of Exhibit 2. Defendant's principal defense, supported by Scott, is that the letter was to be delivered to the addressee personally by Scott. We believe that there can be no serious question but what the jury under the instructions would have acquitted the defendant if the Government's evidence had not convinced them beyond a reasonable doubt that such testimony was untrue and that defendant had in fact caused the mailing of the letter.

■■■■ We are likewise satisfied that the other errors above described, all of which are asserted for the first time upon appeal, did not constitute plain error. The misconduct of the court consists of a comment, "Do you know anything but good about Mr. Foley?" made by the court when a juror on voir dire stated that she knew prosecutor Foley. We believe that the court should refrain from making comments such as this but under the circumstances here, we detect no plain or prejudicial error resulting from the statement.

The prosecuting attorney's expressions of his belief in the guilt of the defendant, when fairly read, are based upon evidence in the record except for one instance in which the prosecutor, on the basis of his extensive experience, purported to be able to tell when a witness was telling the truth and upon the basis thereof expressed the view that a prosecuting witness was testifying truthfully.

■■■■ The last complaint relates to an incomplete statement on the presumption of innocence made by the court at the commencement of the trial. This was a part of the court's explanation to the jury that the Government is confronted with a heavier burden of proof in a criminal case than in a civil case. The court stated that the matter will be further explained in the final instructions. It is not claimed that the final instructions on the presumption of innocence are erroneous.

We conclude that no basis here exists upon the record made in this case for invoking the plain error rule and hence

the general rule, that errors not properly raised in the trial court cannot be considered upon appeal, applies.

The judgment of conviction is affirmed.