# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3286

_____

United States of America

*Plaintiff - Appellee*

v.

Derek J. Petty

*Defendant - Appellant*

_____

No. 21-3290

_____

United States of America

*Plaintiff - Appellee*

v.

Derek J. Petty

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2022
Filed: December 20, 2022
[Unpublished]
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.
_____

PER CURIAM.

A jury found Derek Petty guilty of conspiracy to acquire a controlled substance. *See* 21 U.S.C. §§ 843(a)(3), (d)(1), 846. Petty received a total of 91 months in prison, most of which were for violating the conditions of supervised release. We affirm.

I.

Derek Petty developed an addiction to prescription pain pills after he injured his leg. At first, a doctor prescribed them. But at some point, his girlfriend, who worked in the doctor's office, started writing the prescriptions herself.

A pharmacist noticed. Petty had filled nine prescriptions totaling 1,560 oxycodone pills at the same pharmacy over an eight-month period. The pharmacist talked to the practice's office manager, who then notified the Drug Enforcement Administration.

Following a federal investigation, a grand jury indicted Petty with "knowingly and intentionally combin[ing], conspir[ing], confederat[ing], and agree[ing] . . . to acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of [21 U.S.C. § 843(a)(3)]." Petty filed a motion to dismiss the indictment, but not until after the government had rested its case. He argued then, as he does now, that the indictment is missing a citation to the general drug-conspiracy statute, *see* 21 U.S.C. § 846, and a list of all the facts the jury would need to

find to convict him.  The district court[1] took the motion under advisement, and following the close of evidence, denied it.

The jury, for its part, found Petty guilty.  Based on the verdict, the district court revoked supervised release and sentenced him to a 55-month prison term to be served consecutively with a 36-month sentence on the conspiracy count.  On appeal, he renews the arguments he made before.

II.

The timing is strict for a motion that raises "a defect in the indictment or information."  Fed. R. Crim. P. 12(b)(3)(B).  "[I]f the basis for the motion [was] reasonably available and the motion can be determined without a trial on the merits," the defendant must raise it in a pretrial motion.  Fed. R. Crim. P. 12(b)(3).

Petty's motion, first brought at the close of the government's case, questioned whether the indictment "state[d] an offense" or suffered from a "lack of specificity."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Knowledge of these alleged deficiencies was "reasonably available" before trial started because they would have been "apparent on the face of the indictment" itself.  *United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019).  And given that no evidence would be necessary to evaluate them, the motion could have been "determined without a trial on the merits."  Raising them for the first time after the trial began, as Petty did, makes these challenges untimely, which ordinarily means we will not review them.  *Fogg*, 922 F.3d at 391; *see United States v. Webster*, 797 F.3d 531, 535 & n.3 (8th Cir. 2015).

The one exception is for "good cause."  Fed. R. Crim. P. 12(c)(3).  The problem for Petty, however, is that he has not suggested any cause for the delay, much less a good one.  Indeed, he filed a number of pretrial motions and just decided not to include the

---

[1]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

challenges to the indictment among them. Petty's counsel even admitted that there was no "issue of notice": he just thought problems with the indictment could be raised at any time. Under these circumstances, we will not excuse the late filing. *See Fogg*, 922 F.3d at 391; *United States v. Anderson*, 783 F.3d 727, 741 (8th Cir. 2015).

Realizing that the pretrial-motion requirement presents a problem for him, Petty argues that Rule 12 is unenforceable under the Rules Enabling Act. His theory is that it "modif[ies] a[] substantive right," 28 U.S.C. § 2072(b), making it more than just a procedural rule.

Federal procedural rules approved by the Supreme Court are "presumptive[ly] valid[]." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987). And here, a requirement that certain challenges be made before trial "really regulates procedure." *Hanna v. Plumer*, 380 U.S. 460, 464 (1965) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). It affects only "the manner and the means" by which rights are enforced, not "the rules of decision." *Shady Grove Orthopedic Assocs., P. A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (plurality opinion) (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)). A pretrial-motion requirement, in other words, is perfectly consistent with the Rules Enabling Act.[2]

---

[2]Petty makes two other arguments to get around the pretrial-motion requirement. First, he argues that the district court constructively amended the indictment by allowing the jury "to convict [him] of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007). To the extent this argument is different from a challenge to the sufficiency of the indictment itself, it fails because he was charged *and* convicted of a conspiracy offense. *See id.*; *see also United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001) (concluding that "the words 'combined, conspired, confederated, and agreed' adequately set forth the charge of conspiracy"). His second argument, which is that the district court had to scrutinize the indictment anyway in reviewing his posttrial motions, fares no better. Just because the indictment became relevant later does not excuse Petty from failing to challenge it earlier. *Cf. United States v. Zam Lian Mung*, 989 F.3d 639, 641–42 (8th Cir. 2021) (holding that the pretrial-motion requirement applies even if the defendant later argues that the indictment and jury instructions were deficient).

III.

Petty's two remaining challenges fare no better. One deals with the district court's decision not to remove a juror and the other with the decision to revoke supervised release. Neither was an abuse of discretion. *See United States v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017); *United States v. Ahlemeier*, 391 F.3d 915, 919 (8th Cir. 2004).

A.

When one of the jurors had trouble hearing during voir dire, she reported it to the district court. In her words, she was worried about "miss[ing] something." After listening to how she described the issue, the court decided not to strike her for cause and gave her an audio assistive device for trial. As the court found, she was candid in acknowledging and describing her hearing problems, and there was no evidence that they kept her from acting impartially. *See United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998) (holding that no new trial is necessary unless the defendant can show that the juror was dishonest, partial, and that knowledge of those facts would have permitted a for-cause strike). Beyond satisfying those basic requirements, nothing more was necessary. *Id.*; *see Needham*, 852 F.3d at 839–40 (explaining that courts presume a juror is impartial).

B.

Nor was there a due-process problem with the decision to revoke supervised release. *See Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972). Although the government never presented evidence that Petty violated the condition that he remain law-abiding, none was necessary because the jury had already found that he broke the law. *See United States v. Trung Dang*, 907 F.3d 561, 566 (8th Cir. 2018) ("Unquestionably, the commission of acts sufficient to support a conviction . . . satisf[ies] the requisite misconduct to warrant revocation of supervised release."). The criminal conviction itself, along with all the procedural protections he received at the sentencing

hearing, were more than enough to satisfy "the minimum requirements of due process." *Morrissey*, 408 U.S. at 488–89.

## IV.

We accordingly affirm the judgment of the district court.

_____